1 David Jacobs, State Bar No. 73545
  Amy B. Messigian, State Bar No. 250139
2 EPSTEIN BECKER & GREEN, P.C.
  1925 Century Park East, Suite 500
3 Los Angeles, California 90067-2506
  Telephone: 310.556.8861
4 Facsimile: 310.553.2165
  djacobs@ebglaw.com
5 amessigian@ebglaw.com

6 Attorneys for Movant, JIM GILES

7

FILED

2012 MAY 15 A 11: 40

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N RTHERN DISTRICT OF CALIFORNIA

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11 BETSY FEIST,

12              Plaintiff,

13      v.        **CV 12**

14 RCN CORP. and PAXFIRE, INC.,

15              Defendant.

16

17

18

19

20

21

22

MISCELLANEOUS ACTION NO.

**80  119MISC**

**NOTICE OF MOTION AND
MOTION TO QUASH SUBPOENA
AND REQUEST FOR
PROTECTIVE ORDER BY JIM
GILES**

**[Filed Concurrently with
Declarations of Jim Giles, David
Jacobs and Request For Judicial
Notice]**

Date:
Time:
Place:
Judge:

**ORAL ARGUMENT REQUESTED**

23      **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND**

24            **REQUEST FOR PROTECTIVE ORDER**

25 **TO THIS HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL**

26 **OF RECORD:**

27      NOTICE IS HEREBY GIVEN that on _____, at

28 _____ a.m., or as soon thereafter as the matter may be heard, in Courtroom

1 _____, _____ Floor, 450 Golden Gate Avenue, San Francisco, California, non-
2 party Jim Giles ("Giles") will move, and hereby moves, pursuant to the California
3 Constitution, California Evidence Code § 1070, and Rule 45 of the Federal Rules
4 of Civil Procedure, to quash the Subpoena to Produce Documents, Information, or
5 Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena")
6 served on Giles.

7 　Giles respectfully requests an Order that the Subpoena be quashed in its
8 entirety. Any unpublished material in Giles' possession that is responsive to the
9 Subpoena is absolutely privileged under the California Constitution and California
10 Shield Laws.

11 　Moreover, Giles requests that a Protective Order be entered which provides
12 that he shall not be required to produce any privileged material and that any
13 subsequent subpoenas issued in the instant action shall solely seek published
14 material responsive to the document requests.

15 　The motion will be based upon this Notice of Motion and Motion, the
16 following Memorandum of Points and Authorities, the accompanying declaration
17 of Jim Giles, any reply filed in support of this motion, all other papers filed and
18 proceedings had in this action, oral argument of counsel, and such other matters as
19 the Court may consider.

20 　　　　　　Respectfully Submitted,

21 DATED:  May 15, 2012　　　EPSTEIN BECKER & GREEN, P.C.

23 　　　　　　By: _____
24 　　　　　　　David Jacobs
　　　　　　　Amy B. Messigian

25
26 　　　　　　Attorneys for Movant, JIM GILES

27
28
- 2 -
FIRMWEST:15914551v1　　　　　　MOTION TO QUASH SUBPOENA
　　　　　　　CASE NO.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.    INTRODUCTION**

3      Movant Jim Giles ("Movant") is an investigative free lance journalist who
4 worked on a story for New Scientist magazine. Four of Movant's articles,
5 published on the New Scientist website, relate to a dispute between the parties in
6 the instant action. Movant wrote about a new technology – Netalyzr - by which
7 account holders could track interference with their traffic on the internet by their
8 internet service provider ("ISP"). In a follow up investigative story Movant wrote
9 that Netalyzr had uncovered a practice by more than 10 ISPs of redirecting account
10 holders' internet search queries using a program created by Paxfire, Inc.
11 ("Paxfire").

12      The subpoena issued to Movant by Paxfire, a defendant and counterclaimant
13 in the instant action, seeks documents related to his investigation and reporting of
14 the ISP search query redirection scandal involving Netalyzr and Paxfire (the
15 "Subpoena"). These documents are absolutely privileged under the California
16 Constitution and California Shield Laws. Accordingly, the Court must grant
17 Movant's motion and quash the subpoena issued to him for production of
18 documents.

19 **II.    STATEMENT OF FACTS**

20      New Scientist is a weekly magazine that publishes content relating science
21 and technology for a general audience. Since 1996, New Scientist has also run a
22 website. The magazine and website cover recent developments, news,
23 commentary and speculative articles. (Declaration of Jim Giles ("Giles Decl."),
24 ¶ 2.)

25      Movant is a citizen of San Francisco, California. (Giles Decl, ¶ 2.)  Movant
26 is a professional journalist and frequent author on the New Scientist website.
27 (Giles Decl., ¶ 2.)

28 ///

1    In 2010, Movant wrote two news articles about a new technology created by
2 the International Computer Science Institute ("ICSI") called "Netalyzr," which
3 studies internet connections for interference by ISPs. Movant's articles explained
4 how an account holder could utilize the Netalyzr website to track interference by
5 his or her ISP. These articles were published on the New Scientist webpage.
6 (Giles Decl., ¶ 3, Exh. A.)

7    In 2011, Movant wrote two additional news articles and co-wrote one
8 editorial describing how ICSI had utilized Netalyzr to uncover acts of interference
9 by more than 10 ISPs, each of which was redirecting search queries from Google,
10 Yahoo or Bing to retail websites utilizing a technology supplied by Paxfire. (Id.,
11 ¶ 4, Exh. B.) One of the articles also disclosed that a class action lawsuit had been
12 filed on behalf of an unnamed plaintiff by the law firms Reese Richman and
13 Milberg. (Id.) In fact, Movant was referring to the instant action, brought by
14 Betsy Feist ("Feist") against Paxfire and co-defendant RCN Corporation ("RCN"),
15 an ISP. (Id.) Feist alleges that Paxfire's technology was used by RCN to intercept
16 and redirect Feist's searches, as well as the searches of other putative class
17 members, each of whom held an account for internet services with RCN. In turn,
18 Paxfire has counter-alleged that Feist has interfered with its business relationships
19 with ISPs and defamed Paxfire in violation of New York law. (Req. for Jud. Not.,
20 Exh. 1.)

21    On May 1, 2012, Paxfire served a Subpoena issued out of the Northern
22 District of California on Movant. (Giles Decl., ¶ 5, Exh. C.) The Subpoena
23 demands production of the following documents:

24      "1. For the period January 1, 2011 until the present, all
25         correspondence and communications, including but not
26         limited to email, and all documentation and records
27         pertaining to any such correspondence or
28         communications, including those authored, received,

- 2 -

1     forwarded or otherwise transmitted by Jim Giles,

2     pertaining to:

3          (a) Betsy Feist;

4          (b) Milberg LLP, Richman Reese LLP, or any

5     attorney or other employee of Milberg LLP or Richman

6     Reese LLP;

7          (c) Paxfire; or

8          (d) the Netalyzr."

9     Prior to serving its Subpoena on Movant, counsel for Paxfire contacted

10  Movant and provided him with a draft of the demand for documents. Through

11  counsel, Movant explained that there was clear law preventing Movant's disclosure

12  of his unpublished source documents and that a motion to quash would result if

13  Movant was served with the Subpoena. (Declaration of David Jacobs, ¶ 2.)

14  Nevertheless, Paxfire served its Subpoena on Movant without limiting the

15  Subpoena to seek non-privileged documents.

16  Indeed, other than his published articles, any documents that Movant may

17  have relating to the requests for production unquestionably relate to Movant's

18  investigative reporting of Netalyzr, Paxfire and the ISP search query redirection

19  scandal. (Giles Decl., ¶ 5-6.) These documents are absolutely privileged under

20  California law, which is controlling on this Subpoena, as described below.

21  **III.   JURISDICTION AND CHOICE OF LAW**

22       A.   **The Northern District of California has Jurisdiction over this
             Subpoena and the Attendant Motion to Quash**

23

24  Rule 45 of the Federal Rules of Civil Procedure ("FRCP") provides federal

25  district courts with the authority to issue subpoenas for production of documents.

26  A motion to quash must be made before the issuing court. FRCP 45(c)(3). See

27  also Ford Motor Company v. Edgewood Properties, Inc., 2011 W.L. 601312 (D.

28  N.J. 2011); In re Sealed Case, 141 F.3d 337, 341-343 (D.C.C. 1998); Kearney v.

- 3 -

1  Jandernoa, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997). Because the underlying

2  subpoena was issued in the Northern District of California, this Court has

3  jurisdiction over this motion to quash.

4        **B.    California Law Applies to This Court Sitting in Diversity**

5        Moreover, in considering the motion, this Court must apply California law.

6  Federal courts sitting in diversity must follow the forum state's law relating to the

7  existence and scope of an asserted privilege. Pepsico v. Baird, Kurz & Dobson,

8  LLP, 206 F.R.D. 646 (D. Mo. 2002), affirmed in part and reversed in part on other

9  grounds, 305 F.3d 813 (8th Cir. 2002); Hosey v. Presbyterian Church (U.S.A.), 160

10 F.R.D. 161 (D. Kan. 1995); Southern Pan Services Co. v. S.B. Ballard Const. Co.,

11 2009 W.L. 1405100 (M.D. Fla. 2009).

12       Because the Southern District of New York maintains jurisdiction over the

13 underlying suit on diversity grounds and the counter-claims relate to purported

14 violations of New York law (See Req. for Jud. Not., Exh. 1), state law privileges

15 will apply. Movant resides in California, authored the articles that give rise to the

16 reporter's privilege in California, and was served with a subpoena in California.

17 Thus, as to the instant Subpoena, California law will apply.

18 **IV.    ARGUMENT**

19       **C.    The Subpoena Seeks Privileged Material**

20       The Subpoena seeks to compel Movant to produce documents regarding

21 sources and unpublished information about Netalyzr, Paxfire and the ISP search

22 query redirection scandal that was used to report news on the New Scientist

23 website.

24       Movant properly asserts the Reporter's Privilege and protection under the

25 California Shield Laws because he is and was a reporter engaged in newsgathering

26 activities for the purpose of reporting on the ISP search query redirection scandal.

27 O'Grady v. Superior Court, 139 Cal. App. 4th 1423, 1466, 1468 (Cal. Ct. App.

28 2006) (holding that the California Shield Laws and the Reporter's Privilege

- 4 -

1  doctrine apply to authors of news-oriented websites).  Because Paxfire cannot
2  demonstrate that an exemption or waiver applies to these well-established
3  privileges and protections, the Subpoena must be quashed.

4      **D.    The Subpoena Violates the California Shield Law**

5      Under Rule 45, the Court must grant a motion to quash a subpoena that
6  "requires disclosure of privileged or other protected matter."  FRCP
7  45(c)(3)(a)(iii).  The instant subpoena must be quashed because it requests
8  documents that are absolutely protected from disclosure under the California
9  Shield Law.

10     The California Shield Law is enshrined in the state constitution as well as
11  Evidence Code § 1070.  It precludes compelling a reporter from disclosing
12  confidential sources or any unpublished material. Specifically, the California
13  Shield Law protects from disclosure any "unpublished information obtained or
14  prepared in gathering, receiving, or processing of information for communication
15  to the public." Calif. Const. Art. I § 2(b); Cal. Evid. Code § 1070(a).
16  "Unpublished information" is broadly defined, and extends to all information not
17  literally published. Id.; New York Times Co., 51 Cal. 3d at 456. To be entitled to
18  protection by the Shield Law, the reporter must be engaged in "the gathering and
19  dissemination of news." O'Grady, 139 Cal. App. 4th at 1457.

20     The embodiment of the Shield Law into the California Constitution
21  evidences an intention to provide the broadest protections for a journalist's
22  unpublished materials and their sources for information, whether published or
23  unpublished.  Delaney v. Superior Court, 50 Cal.3d 785, 796-805 (1990). The
24  embodiment of the Shield Law in the California Constitution reflects "a paramount
25  public interest in the maintenance of a vigorous, aggressive and independent press
26  capable of participating in robust, unfettered debate over controversial matters, an
27  interest which has always been a principal concern of the First Amendment." Los

28

- 5 -

1 | Angeles Memorial Coliseum v. National Football League, 89 F.R.D. 489 (C.D.

2 | Cal. 1981) (citing Baker v. F & F Investment, 470 F.2d 778, 782 (2d Cir. 1972)).

3 | Where, as here, the reporter from whom such information is sought is not a

4 | party to the underlying civil litigation, the protections afforded by the California

5 | Shield Law are absolute. New York Times Co. v. Superior Court, 51 Cal.3d 453,

6 | 458 (Cal. App. 1990).

7 | Indeed, the California courts recognize that the protections afforded to

8 | reporters by the California Shield Law must not yield to the competing interests of

9 | civil litigants seeking discovery from a nonparty:

10 | "If every civil litigant who postulates that some

11 | information material to his case is contained within the

12 | undisseminated materials of a newsperson may compel

13 | that nonparty newsperson to present his information to

14 | the trial court for inspection, balancing of interests, and

15 | probable disclosure, the protection afforded newspersons

16 | would be greatly reduced, if not wholly vitiated."

17 | Playboy Enterprises, Inc. v. Superior Court, 154 Cal. App. 3d 14, 27 (Cal. App.

18 | 1984).

19 | Moreover, in interpreting Evidence Code § 1070, the California Court of

20 | Appeal said in Hammarley v. Superior Court, 89 Cal.App.3d 388, 397-398 (1979)

21 | that "the statutory privilege protecting unpublished information is not limited to

22 | material which might lead to the disclosure of a newsman's confidential sources,

23 | but encompasses all information acquired by the newsman in the course of his

24 | professional activities which he has not disseminated to the public." (Emphasis

25 | added.)

26 | In the present case, the Subpoena falls squarely within the absolute

27 | protections afforded to Movant by the California Shield Law. Movant is a non-

28 | party reporter who has investigated and written about the ISP search query

- 6 -

FIRMWEST:15914551v1                                MOTION TO QUASH SUBPOENA
                                                                    CASE NO.

1 | redirection scandal involving Paxfire, Netalyzr and the Feist putative class action.

2 | Any non-published documents relating to these matters are protected by the

3 | California Shield Law.  Movant has a constitutional right not to reveal this

4 | information.  See Ward v. News Group Newspapers, LTC., 18 Media L. Rep.

5 | 1140, 1990 W.L. 256836 (C.D.Cal. 1990).

6 |      Moreover, while the privilege may yield in criminal cases where the right to

7 | due process is implicated, no similar right exists in civil cases.  New York Times

8 | Co., 51 Cal.3d at 456; see McGarry v. University of San Diego, 154 Cal.App.4th

9 | 97, 119-120.  Accordingly, the Court need not balance the interests of Paxfire and

10 | Movant.  Movant's right to maintain the confidentiality of his unpublished

11 | documents relating to the ISP search query redirection scandal is absolute; it

12 | trumps any motive or interest that Paxfire may have in obtaining Movant's

13 | unpublished documents.

14 |      Accordingly, the Court must quash the subpoena to Movant which overtly

15 | and intentionally seeks documents that are absolutely protected from discovery.

16 | **E.    A Motion for Protective Order Is Necessary to Reasonably Tailor**
17 | **Any Additional Subpoenas to Movant**

18 |      Movant seeks a protective order that limits any further subpoenas which may

19 | be issued in this matter to his published documents.  Movant, through counsel,

20 | already alerted Paxfire to the overbreadth of its proposed document requests.  To

21 | the extent that Paxfire, or any other party, seeks to obtain records from Movant in

22 | this matter, Movant requests a limiting instruction consistent with the absolute

23 | privilege that Movant maintains over his unpublished documents relating to the

24 | underlying claims at issue in the instant action.

25 |      Good cause exists to provide such protective order to reduce any burden to

26 | Movant, his attorneys and this Court.

27 | ///

28 | ///

- 7 -

1  **V.    CONCLUSION**

2       As stated above, the subpoena calls for the production of documents that are

3  absolutely privileged under California law.  Pursuant to Rule 45, the Court must

4  quash the subpoena.  To the extent that Movant may be subject to another

5  subpoena in this matter, Movant respectfully requests a protective order limiting

6  the scope of production to Movant's published articles.

7                                    Respectfully Submitted,

8  DATED:  May 15, 2012             EPSTEIN BECKER & GREEN, P.C.

9

10                                  By:

11                                     David Jacobs
                                       Amy B. Messigian
12                                     Attorneys for Movant, JIM GILES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -